**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JAMES F. MORRISON,**

                                 **CASE NO. 2:14-CV-00312**

    **Petitioner,**                        **JUDGE ALGENON L. MARBLEY**

                                   **Magistrate Judge Elizabeth P. Deavers**

    **v.**

**WARDEN, RICHLAND CORRECTIONAL
INSTITUTION,[1]**

    **Respondent.**

                                       **ORDER and
REPORT AND RECOMMENDATION**

       Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Amended Petition* (ECF No. 6), Respondent's *Return of Writ*, *Response to Amended Petition*, and *Amended Answer* (ECF Nos. 5, 7, 10), Petitioner's *Traverse* (ECF No. 13), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing and the appointment of counsel (see ECF No. 9) are **DENIED.**

**Facts and Procedural History**

       The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On June 3, 2010,[2] the Delaware County Grand Jury returned a thirty-six count indictment against Appellant James F. Morrison. Appellant was charged with six counts of Pandering Sexually

---

[1] Petitioner originally named the Ohio Department of Rehabilitation and Corrections. Petitioner, however, is currently confined at the Richland Correctional Institution. The Correct party Respondent is the Warden at Richland.

[2] The record reflects that the indictment was filed on June 3, 2011, and the appellate court's reference to June 3, 2010 appears to have been a typographical error. (ECF No. 5-1, PageID# 54.)

Oriented Material Involving a Minor, in violation of R.C. § 2907.322(A) (1), for creating and reproducing images of child rape on his computer by downloading them through the Limewire file sharing network; nineteen counts of Illegal Use of a Minor in Nudity Orientated Material, in violation of R.C. § 2907.323(A) (3), for creating and reproducing lewd images of children in a state of nudity on his computer by downloading them through the Limewire file sharing network; eight counts of Attempted Pandering Sexually Oriented Material Involving a Minor, in violation of R.C. § 2907.322(A) (1), for attempting to create and reproduce images of child rape on his computer though the Limewire file sharing network; one count of Identity Fraud and Falsification, in violation of R.C. § 2913.49(B) (2) and § 2921.13(A) (3), for providing a false name and social security number to law enforcement during the execution of the search warrant of his residence; and one count of Illegal Use of a Minor in Nudity Oriented Material, in violation of R.C. § 2907.323(A) (2), for taking a lewd photograph of his underage daughter in a state of nudity.

On May 7, 2012, pursuant to a plea agreement, Appellant entered an Alford plea (*North Carolina v. Alford*, 400 U.S. 25 (1970)) to only four counts of Attempted Pandering Sexually Oriented Matter Involving a Minor, a third-degree felony, and the remaining counts were dismissed. (See May 8, 2012, Plea Agreement and May 15, 2012, Judgment Entry on Guilty Pleas).[3]

In its May 15, 2012, Judgment Entry on Guilty Pleas, the trial court stated:

"Based on the facts of this case, the Defendant was advised that he had a choice of going to trial and, if convicted, receiving sentences totaling over One Hundred (100) years or, if he accepted the plea offer from the State of Ohio he could receive not more than Twelve (12) years in prison. The Court then ascertained that the Defendant understood the same and with such understanding still wished to enter pleas of Guilty, as contemplated by *North Carolina v. Alford, supra*, to the crimes of Attempted Pandering Sexually Oriented Matter Involving a Minor, as set forth in Counts Twenty–Six, Twenty–Seven, Twenty–Eight, and Twenty–Nine of the Indictment." (5/15/12 J.E. at 4).

---

[3]"An *Alford* plea is a plea of guilt 'accompanied by protestations of innocence,' or made in the absence of the defendant's admission that he committed the crime charged against him." *Williams v. Sheets*, No. 1:04CV403, 2007 WL 184745, at *5 n.2 (S.D. Ohio Jan. 19, 2007) (quoting *Alford*, 400 U.S. at 31-32).

At the beginning of the sentencing hearing on July 27, 2012, the trial court first heard arguments on the issue of merger. In support of his argument that some or all of the offenses to which he pled guilty must merge, Appellant presented the testimony of computer forensic expert C. Matthew Curtin. [FN1]

FN1. Mr. Curtin had also filed an Affidavit with the court.

Mr. Curtin offered extensive background information on peer-to-peer-file sharing and computer data storage. During his testimony, Mr. Curtin explained that when someone uses the Limewire program, they are presented with a search box. The user then types a search term in the box and the Limewire program searches the files of other users for these search term or terms. (T. at 25). Any files with names containing those search terms then appear in a list. (T. at 26). The user may then select files from the list either by selecting individual files or selecting a range of files. *Id*. The user is then able to click the download button to begin the download process. (T. at 27).

Files can be downloaded through the Limewire software by three different methods: (1) a user can highlight a single file listed in the search results and then press the download one time, thereby creating a single file, in a distinct location, on the hard drive; (2) a user can hold down the control key on the keyboard and then use the mouse to select any number of individual files in the search results; the user would then press the download button once and multiple files would be created on the hard drive in separate and distinct locations; or (3) a user can hold down the shift key on the keyboard to select two separate files on the search results list, thereby selecting any files on the list appearing between the two selected files; the user would then press the download button once and multiple files would be created on the hard drive in separate and distinct locations. (T. at 43–44, 46–47).

Curtin went on to explain that when the download button is depressed, an "empty" file is created on the computer, which is analogous to a hanging paper file folder into which papers can later be placed. (T. at 17).

At that point, the files would go into a "holding pattern" while Limewire looked for available "download slots" or intervals when it was possible to transfer a file between the computers. Limewire would then transfer a file each time a new download slot came

open until all the selected files were transferred. (T. at 11–15, 21–22, 44–48, 60–61, 63–64).

Mr. Curtin reviewed the computer data and came to three conclusions: First, a Limewire user cannot know the content of a file until it is actually downloaded because Limewire did not have a preview function for photos. Second, the files Mr. Morrison attempted to download were actually empty on his computer, meaning that they were merely placeholder files and the download was never completed. (T. at 10–12, 16–18). Third, he concluded that the forensic evidence was consistent with a single download: Appellant could have downloaded all four files with a single act of clicking the download button once. Id.

In this case, each "empty" file was given a separate name and stored at a separate physical location on Appellant's hard drive. (T. at 31–32). Each of these files was individually identified in the Indictment and Bill of Particulars furnished to Appellant. These "placeholder files", which would ultimately become images of child pornography when the transfer of data was complete, also have separate and distinct creation times. (T. at 30–31).

Curtin then testified that while the forensic evidence in this case is consistent with a "single act" of downloading (selecting multiple files and then pressing the download button once), it is also consistent with multiple acts of downloading (selecting individual files and pressing the download button multiple times). (T. at 36). Curtin explained, however, that prior to a user being able to download multiple files with a single click of the Limewire download button, separate actions and decisions on the part of the user are required. (T. at 45).

Curtin further explained that while it was possible in Limewire to separately download each file by selecting a file, clicking download, selecting another file, clicking download, etc., the user would need sufficient time between each download. In that regard, the evidence showed that the files were downloaded at 1:06:28 a.m., 1:24:42 a.m., 1:25:27 a.m., and 1:25:28 a.m., respectively. Thus, Appellant only had 45 seconds between the second and third files, and merely one second between the third and fourth files, making separate downloads highly unlikely. (T. at 36–39, 63, 68–72).

Curtin explained that there was nothing in the Limewire data which would allow him to know which one of the three methods

4

were used in any given case; forensically, it is an unknowable fact. (T. at 47–48).

While it cannot be forensically determined how an individual used Limewire to download files in any case, Curtin testified that where the download of multiple files is initiated with a single mouse-click of the download button, the user would have had to have previously decided to download multiple items at one time. (T. at 44).

Curtin further testified that even in the case where the download button is depressed a single time, it takes multiple, affirmative acts on the part of the user to select multiple files to be downloaded. (T. at 44). Curtin then repeated that, in addition to requiring multiple affirmative acts to download multiple files, it also requires a conscious choice to select multiple files from the search list—as opposed to a single file. (T. at 45).

Assisting the State in offering a visual demonstration of these concepts to the trial court, Curtin explained that the method of selecting multiple files through the Limewire software is analogous to selecting files though the Windows Explorer interface (the software in Windows that lets you browse through "My Documents" and other locations on a computer). (T. at 45–48). An overhead projector was used to demonstrate each of the possible methods of downloading files. Curtin showed the trial court how multiple acts are required to select multiple files. (T. at 46).

After listening to the testimony of Mr. Curtin, and considering the arguments of counsel, the trial court concluded that each count was the product of a separate act, and occurred with a separate animus. (T. at 91). The trial court then heard statements from counsel, one victim's mother, and Appellant.

The trial court sentenced Appellant to thirty (30) months in prison on each count to run consecutively for a total of ten (10) years. [FN2] (T. at 116).

FN2. Appellant was also designated a Tier II sex offender for purposes of registration and notification under R.C. Chapter 2950

Appellant now appeals, assigning the following error for review:

ASSIGNMENT OF ERROR

> "I. THE TRIAL COURT VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION WHEN IT FAILED TO MERGE THE CONVICTIONS IN COUNTS 26, 27, 28 AND 29."

*State v. Morrison,* No. 12 CAA 08 0053, 2013 WL 2325927, at *1-4 (Ohio App. 5th Dist. May 24, 2013).  On May 24, 2013, the appellate court affirmed the judgment of the trial court.  *Id.*  On September 25, 2013, the Ohio Supreme Court denied the appeal.  *State v. Morrison*, 136 Ohio St.3d 1495 (Ohio 2013).

On July 25, 2013, Petitioner filed a *pro se* application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  (ECF No. 5-1, PageID# 263.)  He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal an issue that his convictions violated the Double Jeopardy Clause and should have been merged at sentencing under Ohio law; and that his sentence constituted cruel and unusual punishment and was grossly disproportionate to others convicted of similar crimes.  PageID# 265-68.  On August 27, 2013, the appellate court denied the application to reopen the appeal.  PageID# 286.  On December 24, 2013, the Ohio Supreme Court denied the appeal.  *State v. Morrison*, 137 Ohio St.3d 1443 (Ohio 2013).

Petitioner asserts that his convictions violate the Double Jeopardy Clause and that he was denied the effective assistance of appellate counsel.  It is the position of the Respondent that Petitioner's claims are waived or lack merit.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable

barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court"
and emphasized that courts must not "lightly conclude that a State's criminal justice system has
experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v.
Titlow,* ─── U.S. ───, ───, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter,* 562 U.S.86
(2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly
deferential standard for evaluating state-court rulings, and demands that state-court decisions be
given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

       The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

28 U.S.C. § 2254(e)(1). Habeas corpus should be denied unless the state court decision was
contrary to, or involved an unreasonable application of, clearly established federal law as
determined by the Supreme Court, or based on an unreasonable determination of the facts in light
of the evidence presented to the state courts. 28 U.S.C. § 2254(d)(1); *Coley v. Bagley*, 706 F.3d
741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). *See also* 28
U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable
determination of the facts in light of the evidence presented in the State court proceeding"). The
United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent
> if (1) "the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law[,]" or (2) "the
> state court confronts facts that are materially indistinguishable
> from a relevant Supreme Court precedent and arrives" at a
> different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an

"unreasonable application" under 28 U.S.C. § 2254(d) (1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748-49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); s*ee also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. "'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" *Holder v. Palme*r, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas

court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

**Claim One**

Petitioner asserts that his convictions violate the Double Jeopardy Clause because, according to him, he committed only one criminal act with a single animus. *Amended Petition* (ECF No. 6, PageID# 476.) He asserts that his four convictions on attempted pandering sexually oriented matter involving a minor should have been merged at sentencing. *Id*. He argues that the testimony and affidavit of C. Matthew Curtin supports this claim. (*See Sentencing Transcript*, ECF No. 5-2.) Petitioner further argues at length that, because the files he created "are empty files that contain no content whatsoever, meaning; the download process was never completed" (*Traverse,* ECF No. 13, PageID# 517), the State failed to establish four separate acts. He contends that other Ohio courts have held in similar circumstances on the authority of *State v. Johnson*, 128 Ohio St.3d 153 (Ohio 2010), that his charges should have been merged at sentencing. The state appellate court rejected Petitioner's arguments:

> Appellant claims that the trial court erred in failing to merge the counts of Attempted Pandering Sexually Oriented Matter Involving a Minor. We disagree.
>
> In the case sub judice, Appellant argues that he committed only one criminal act with only one animus in this case and therefore the four counts of Attempted Pandering Sexually Oriented Matter Involving a Minor should have merged for purposes of sentencing.
>
> The defendant bears the burden of proving an entitlement to merger at sentencing pursuant to R.C. § 2941.25. *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). The conditions required for merger are set forth in R.C. § 2941.25(A):
>
> "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

Thus, a defendant cannot establish an entitlement to merger without demonstrating that the offenses result from the "same conduct" and share a "similar import." *See State v. Cooper*, 104 Ohio St.3d 293, 2004–Ohio–6553, quoting *State v. Logan*, 60 Ohio St.2d 126, 128 ("'In addition to the requirement of similar import * * *, the defendant, in order to obtain the protection of R.C. 2941.25(A), must show that the prosecution has relied upon the same conduct to support both offenses charged'").

R.C. § 2941.25(B) restates these requirements in the negative by prohibiting merger where the offenses are of "dissimilar import" or were "committed separately," but also identifies a third bar to merger where the offenses were committed with a "separate animus as to each."

In *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, the Supreme Court of Ohio unanimously abandoned the standard for determining the "similar import" of offenses articulated in State v. Rance, 85 Ohio St.3d 632 and further clarified the proper interpretation of R.C. § 2941.25.

In *Johnson*, the Supreme Court held that under Ohio's allied offense statute the proper analysis involves two questions: first, whether it is possible to commit one offense and commit the other with the same conduct, and if so, whether the two offenses were actually committed with the same conduct. *Id*. If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id*.

In determining whether offenses are allied offenses of similar import under R.C. § 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. [*State v.*] *Blankenship*, 38 Ohio St.3d [116,] 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses can be committed by the same conduct. It is a matter of possibility if the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import, rather than certainty, that the same conduct will constitute commission of both offenses."

10

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.*] *Brown*, 119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged. Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. § 2941.25(B), the offenses will not merge. *See State v. Burrell*, 2011–Ohio–2091.

In the case sub judice, in finding against merger, the trial court found that Appellant made four separate attempts to download four separate images and that each image was a new and distinct crime. (July 31, 2012, Judgment Entry).

Upon review, we find that trial court was correct in finding that counts herein should not be merged.

As stated by the court in *State v. Brewster*, Hamilton App. Nos. C–30024 and C–30025, 2004–Ohio–2993, "[m]ultiple violations of the same statute are not allied offenses of similar import, and a defendant may be sentenced for each violation."

The files containing the images in this case were separate and distinct. They were displayed with separate names and stored in separate locations. To the extent that the multiple images depicted different victims, courts have held that the charges do not merge. State v. Collier, 8th Dist. No. 95572, 2011–Ohio–2791; *State v. Barrett* (2012), 974 N.E.2d 185, 187–188.

Even if they did constitute allied offenses of similar import, which they clearly are not, Appellant's argument would still fail. A "[d]efendant who enters [a] guilty plea to two distinct offenses waives argument that [the] offenses are, in reality, allied offenses of similar import." *State v. Fortner*, Franklin App. No. 08AP–191, 2008–Ohio–5067, citing *State v. Hooper*, Columbiana App. No. 03CO30, 2005–Ohio–7084. "[A] defendant waives his right to challenge any defects in an indictment by pleading guilty." *Fortner* at ¶ 8. *See, also, State v. Kent* (1980), 68 Ohio App.2d 151.

> Further, Appellant has failed to offer anything in the record to
> rebut a finding that the images were separate and distinct, so he has
> failed to exemplify his claimed error. See App. R. 16(A) (7)
>
> Based on the foregoing, we find that the trial court did not err in
> sentencing Appellant on all four counts of Attempted Pandering
> Sexually Oriented Matter Involving a Minor.

*State v. Morrison*, 2013 WL 2325927, at *4-6.[4]

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

> Ordinarily, a plea of guilt conclusively admits the defendant's guilt
> to the crimes charged, and any subsequent collateral attack upon

---

[4] A petitioner fairly presents a claim of the alleged violation of the Double Jeopardy Clause, even where the petitioner argues the claim as a violation of Ohio's statute on allied offenses of similar import. *See Helton v. Jeffreys*, No. 2:06-cv-558, 2007 WL 1100428, at *5. Here, however, Petitioner raised an issue under the Double Jeopardy Clause. (See ECF No. 5-1, PageID# 143.)

that plea is limited to an inquiry as to whether it was voluntarily and knowingly given. *United States v. Broce*, 488 U.S. 563, 569 (1989). In the double jeopardy context, an exception to this rule exists when it is plain from the language of the charging document that no legally cognizable additional crime was charged to which the defendant could properly have entered a plea of guilt. *Id*. at 576. In all other respects, any right to assert a claim of double jeopardy is waived by the entry of the guilty plea. *Ibid*.

In *Broce,* the defendant entered guilty pleas to two separate indictments alleging conspiracies under the Sherman Act, 15 U.S.C. § 1, and later moved to vacate his sentences on the basis that there was in reality only a single conspiracy, and therefore his right under the Double Jeopardy Clause was violated. The Supreme Court focused on the charging documents to determine if the defendant's double jeopardy challenge survived his guilty plea. The Court noted: "Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Broce*, 488 U.S. at 570. The defendant's claim was premised on the contention that the two indictments alleged separate parts of the same illegal agreement. However, "[r]espondents had the opportunity, instead of entering their guilty pleas, to challenge the theory of the indictments and to attempt to show the existence of only one conspiracy in a trial-type proceeding. They chose not to, and hence relinquished that entitlement." *Id*. at 571.

*Helton v. Jeffreys*, 2007 WL 1100428, at *8 (S.D. Ohio April 10, 2007) (citing *Tarpley v. Bock*, unpublished, 2003 WL 22258199 (E.D. Mich. Sept. 25, 2003); *Emrick v. Wolfe*, unpublished, 2006 WL 3500005 (S.D. Ohio Dec. 5, 2006)). "[F]ederal courts 'view an *Alford* plea as nothing more than a variation of an ordinary guilty plea[.]'" *Mitchell v. Jefferson Parish Corr. Ctr.*, No. 13-4963, 2013 WL 6002770, at *4 n.7 (E.D. La. Nov. 12, 2013) (citing *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006)).

The record fails to support Petitioner's claim. Counts 26-29 of the *Indictment* charged Petitioner with attempting to create, reproduce or publish material showing a minor participating or engaging in sexual activity involving four separate acts. (ECF No. 5-1, PageID# 66-67).

13

Testimony by the forensic expert supports four separate acts in this respect.  As discussed by the state appellate court, although the time period between each download made separate downloads "highly unlikely," *Morrison*, 2013 WL 2325927, at *3,

> where the download of multiple files is initiated with a single mouse-click of the download button, the user would have had to have previously decided to download multiple items at one time. (T. at 44).
>
> . . . [E]ven in the case where the download button is depressed a single time, it takes multiple, affirmative acts on the part of the user to select multiple files to be downloaded. (T. at 44). . . . [I]n addition to requiring multiple affirmative acts to download multiple files, it also requires a conscious choice to select multiple files from the search list—as opposed to a single file. (T. at 45).

*Id.*  "Curtin showed the trial court how multiple acts are required to select multiple files."  *Id.*

> In this case, each "empty" file was given a separate name and stored at a separate physical location on Appellant's hard drive. (T. at 31–32). Each of these files was individually identified in the Indictment and Bill of Particulars[5] furnished to Appellant. These "placeholder files", which would ultimately become images of child pornography when the transfer of data was complete, also have separate and distinct creation times. (T. at 30–31).

Id. *at *2.*  Thus, evidence reflected that Petitioner committed four separate attempts to download four separate images.

To the extent that Petitioner contends that the state court erred in its analysis of whether to merge the sentences and whether the offenses are allied offenses of similar import, these claims are not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  A federal

---

[5] Petitioner complains that the State failed to provide him with a Bill of Particulars.  Traverse (ECF No. 13, PageID#514.)  Any such failure, however, does not affect this Court's analysis of Petitioner's double jeopardy claim.

habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

Claim one lacks merit.

**Claim Two**

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to properly raise on appeal that his case was one of "first impression" involving "empty files" and involved a single animus under the Double Jeopardy Clause, *Traverse* (ECF No. 13, PageID# 521-22). He also claims that his sentence constitutes cruel and unusual punishment and is grossly disproportionate to other sentences in similar cases.

Petitioner argues that his attorney failed to adequately present a double jeopardy claim to the state appellate court. PageID# 523. The state appellate court rejected the argument:

> Petitioner herein argues that his Appellate counsel was ineffective in failing "to properly argue his chosen assignments of error" and failing to raise additional assignments of error.
>
> ***
>
> On appeal, the only assignment of error raised was the failure to merge the convictions.
>
> Upon review, we find that Appellant presents no arguments as to how or why his counsel was ineffective or that his representation was deficient in presenting such argument.
>
> ***
>
> [W]e find Appellant's argument[] unpersuasive and thus find that no genuine issue exists as to whether Appellant was denied the effective assistance of counsel on appeal.

(ECF No. 5-1, PageID# 288-89.)

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)); *see also Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999) (outlining factors to consider in assessing a claim of ineffective assistance of appellate counsel).

The Court has determined that Petitioner's claim that his convictions violate the Double Jeopardy Clause lack merit.  Therefore, Petitioner cannot establish the ineffective assistance of appellate counsel for failing to adequately raise the issue on this basis.

Petitioner also asserts that his sentence constitutes cruel and unusual punishment and is grossly disproportionate to the crime, and that his attorney performed in a constitutionally ineffective manner by failing to raise these issues on appeal.  The state appellate court rejected these claims as follows:

> Appellant. . . argues that his counsel was ineffective in failing to argue that imposition of consecutive sentences in this matter constituted cruel and unusual punishment, that his federal and state constitutional rights were violated and that the trial court abused its discretion by imposing same.
>
> Based on the nature of the conduct in this case along with information before the trial court, we find nothing to persuade this Court that counsel was deficient in failing to assign error to imposition of consecutive sentence.

(ECF No. 5-1, PageID# 288-89.)   The state appellate court did not unreasonably deny Petitioner's claim of ineffective assistance of appellate counsel.

"'[A] sentence within the statutory maximum set by statute generally does not constitute cruel and unusual punishment.'"  *McPhail v. Renico*, 412 F.Supp.2d 647, 656 (E.D. Mich. 2006) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'"  *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)).

> Under federal law, "[s]trict proportionality between a crime and its punishment is not required. Only extreme sentences that are grossly disproportionate to the crime are prohibited." *Thompson v. Williams*, 685 F.Supp.2d 712, 716 (N.D. Ohio 2010) (citations omitted).  A sentence within the statutory maximum generally does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

*Haugabook v. Warden, Lebanon Corr. Inst.*, No. 10-55-SJD-JGW, 2011 WL 3900760, at *3 (S.D. Ohio May 18, 2011).  Petitioner's claim that "his sentence is cruel and unusual when compared with sentences that others have received for committing similar crimes lacks merit because the Constitution does not require comparative proportionality." *Id.* (quoting *Thompson*, 685 F. Supp. 2d at 716.  To the extent that Petitioner asserts that his sentence violates the Equal Protection Clause, that claim likewise fails.  "'The Equal Protection Clause prohibits states from making distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.'" *Hines v. Brunsman*, No. 3:08 CV 2916, at *24 (N.D. Ohio Feb. 26, 2010) (quoting *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007).  Such are not the circumstances here.

Therefore, Petitioner has failed to establish ineffective assistance of appellate counsel.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b) (1).

18

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  */s/ Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge